UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

In re:                                                          Chapter 11

138 QB Acquisition Corp.                                        Case No.

                                        Debtor.
-------------------------------------------------------------x

## DEBTOR'S DECLARATION
## PURSUANT TO LOCAL BANKRUPTCY RULE 1007-4

Aaron Ambalu declares the following under penalties of perjury pursuant to 28 U.S.C. § 1746:

1.    I am the manager of 138 QB Acquisition Corp. (the "Debtor"), charged with the responsibility of supervising the Debtor's efforts to seek an adjudication of rights under a certain real estate contract with a view of then being able to restructure the Debtor's legal and financial affairs.  As such, I fully familiar with the facts and circumstances set forth below.

2.    I respectfully submit this Declaration in accordance with Local Bankruptcy Rule 1007-4 in support of the Debtor's filing of a voluntary petition under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

### Events Necessitating the Chapter 11 Filing

3.    The events surrounding this Chapter 11 filing are not solely linked to the Covid-19 pandemic, but certainly the current crisis has contributed to the issues facing the Debtor.   Independent of the underlying contractual disputes, described below, a closing by the current date of April 7, 2020 is virtually impossible in the wake of the unprecedented shutdowns in American business.  However, the issues here transcend the Covid-19 epidemic alone.

4.    By way of brief background, the Debtor is the permitted assignee of a real estate contract to acquire a development site at 138-23 Queens Boulevard, Briarwood, NY (the

"Property").  The Property is equally owned by Briar MG LLC and SG Queens LLC as joint owners (collectively, the "Sellers").

5.      On March 12, 2020, the Debtor's predecessor, Lacinyc, Inc. ("Lacinyc"), entered into an Agreement of Purchase and Sale (the "Sale Contract") with the Sellers to purchase the Property for the sum of $12,950,000, inclusive of a downpayment of $1,295,000 (the "Deposit").  Lacinyc assigned the Sale Contract to the Debtor on March 31, 2020 pursuant to Section 9(a) thereof based upon its one time right to assign its rights to an affiliate.

### A.   Fraud in the Inducement in Signing the Sale Contract

6.      The lead-up to the execution of the Sale Contract covered a relatively short period of time.  From the beginning, the Sellers sought prompt execution of an agreement under threats that another purchaser was allegedly ready to proceed.  To minimize extended due diligence, the Sellers indicated that they were prepared to share their pre-exiting development plans for the Property (the "Plans").

7.      While the Property has two current tenants, their leases are about to expire in early 2021.  Thus, the Property was being sold as a future development site, based upon total available building square footage.

8.      In fact, the Plans were procured by the Sellers in anticipation of a redevelopment, and were presented to the Debtor and its predecessor to be relied upon regarding the scope of future development.

9.      Unfortunately, however, the Plans have proven to be materially false and inaccurate, undermining the overall value of the Sale Contract.

10.    According to the Plans, the Property was listed with a total lot area of 29,784 square feet.  This would allow for redevelopment of approximately 89,000 square feet of new building space.

11.    By presenting the Plans to the Debtor and its predecessor in lieu of further due diligence, the Sellers implicitly, if not expressly, vouched for their accuracy, and thereby induced execution of the Sale Contract based upon the representation that the Property will allow new development of approximately 89,000 square feet.

12.    The value of the Sale Contract was premised upon a lot size of 29,784 square feet, with the corresponding ability to redevelop approximately 89,000 square feet. Shortly after the Contract was signed, it was learned that the Plans had misrepresented and misstated the actual lot area of the Property in a material respect.

13.    Instead of a total lot area of 29,784 square feet, the true lot size of the Property is approximately 24,000 square feet.  This reduces the possible redevelopment of the Property to approximately 73,000 square feet, with a corresponding reduction in the Property's overall value.

14.    In short, the Sellers fraudulently induced the signing of the Sale Contract with false and inaccurate Plans overstating the Property's lot size.

15.    While the Sale Contract contains various disclaimers, these provisions do not afford the Sellers a safe harbor in the face of the Debtor's fraudulent inducement claims. Indeed, contractual disclaimers do not bar suit where, as here, a seller knowingly provides false information to induce a purchaser to sign a contract.  Moreover, the contractual disclaimers here do not preclude the Debtor's claims because they are general in scope and make no specific reference to the Plans.

**B.  The Immediate Need to File a Chapter 11 Petition**

16.     Pursuant to the Sale Contract, April 7, 2020 (time of the essence) is currently scheduled as the closing date.  Obviously, however, the disputes regarding the validity of the Sale Contract cannot be adjudicated by that time (or at any time in the immediate future for that matter), given the debilitating effects of the Covid-19 crisis.

17.     Rather than risk even the possibility of an unjust forfeiture, the Debtor is filing this Chapter 11 petition to preserve all of its rights, remedies and defenses under the Sale Contract, while the myriad legal issues surrounding the Debtor's fraudulent inducement claim are litigated or otherwise resolved.

18.     In addition to the foregoing, the Covid-19 crisis – in and of itself – may very well come to redefine the parties' contractual rights under principles of *force majeure*, impossibility of performance, and frustration of purpose.

19.     At a minimum, by filing the Chapter 11 petition, the Debtor gains the benefit of an automatic sixty (60) day extension of time under the Sale Contract in accordance with 11 U.S.C. §108(b).   Thus, Chapter 11 provides necessary flexibility to address the confluence of events facing the Debtor at this time.

20.     The Debtor intends to promptly file an adversary proceeding against the Sellers seeking a determination of the parties' respective rights and obligations under the Sale Contract, including all issues relating to claims based on fraudulent inducement.

21.     With the State Courts effectively closed, Chapter 11 is the best, and perhaps, the only available forum to protect the Debtor's rights and remedies, while it seeks a fair and proper adjudication of the underlying issues.

## Local Rule 1007-4 Disclosures

22.     Pursuant to Local Rule 1007-4(a)(iv) and (v), no committees were formed prior to the filing of the Debtor's Petition.

23.     Pursuant to Local Rule 1007-4(a)(vi), a list of the Debtor's twenty largest creditors is included as part of the Debtor's bankruptcy schedules, being filed herewith.

24.     Pursuant to Local Rule 1007-4(a)(vii), the Debtor has no secured creditors.

25.     Pursuant to Local Rule 1007-4(a)(viii), the Debtor's assets and liabilities are set forth in schedules being filed herewith.

26.     Pursuant to Local Rule 1007-4(a)(ix), a list of the Debtor's equity holder comprising a member trust is also annexed hereto.

27.     Pursuant to Local Rule 1007-4(a)(x), none of the Debtor's assets are in the possession or custody of any custodian, public officer, mortgagee, pledge, assignee of rents or secured creditor.

28.     Pursuant to Local Rule 1007-4(a)(xi), the Debtor is a contract vendee, and does not yet own the Property.

29.     Pursuant to Local Rule 1007-4(a)(xii), the Debtor's books and records are located in my personal law offices in Manhattan.

30.     Pursuant to Local Rule 1007-4(a)(xiii), the Debtor is not a party to any pending lawsuits.

31.     Pursuant to Local Rule 1007-4(a)(xiv), the undersigned is the manager of the Debtor.

32.     Pursuant to Local Rule 1007-4(a)(xv), the Debtor has no direct employees.

33.     Pursuant to Local Rule 1007-4(a)(xvi and xvii), the Debtor does not anticipate making any disbursements in the next thirty (30) days, unless the disputes are resolved in a quicker timeframe than anticipated.

Dated:  New York, New York
        April 6, 2020

/s/ Aaron Ambalu, Manager